CATHARINE M. JOHNSON, Executrix, &c., *v.* THE HUDSON RIVER RAILROAD COMPANY.

In an action for personal injury from negligence of the defendant, the absence of any fault on the part of the plaintiff may be inferred from the circumstances, in connection with the ordinary habits, conduct and motives of men.

It cannot be said as a universal rule either that it lies upon the plaintiff to prove affirmatively that he was not guilty of negligence, or upon the defendant to prove the contrary, in order to establish his defence.

The character of the defendant's negligence may be such as *prima facie* to prove the whole issue; and the known indisposition of men needlessly to subject themselves to difficulty and danger is to be considered in determining the question.

On the other hand, the case may be such—*e. g.,* a slight obstruction in a highway, plainly visible, and easily to be avoided by ordinary vigilance and care—as to make it necessary for the plaintiff to show, by independent evidence, that he did not bring the misfortune upon himself.

The propriety of a nonsuit in this class of cases cannot be determined by any general rule as to the burden of proof, but to carry a case to the jury it must be such, all the circumstances considered, as to authorize them to find that the injury was caused solely by the negligence of the defendant.

A horse car of the defendant was proceeding upon its railroad without lights or bells on a dark evening in a street of New York city, obstructed by

a sewer in the process of construction. The plaintiff, a sober cartman, was found dead upon the track, under circumstances authorizing the inference that he had fastened his horse, and was groping in the dark to find a safe passage for his team, when struck by the defendant's car. There was no witness to the accident: *Held,* that the dangerous tendency of the defendant's conduct was such as, in the absence of any other evidence than the presumption that the plaintiff had the same regard for his safety as other men, to authorize the attributing of the accident to the negligence of the defendant, and the refusal of a nonsuit.

It is not error in such a case to charge that, to exonerate the plaintiff, the negligence of the defendant must be such as contributed *directly* to the injury. The word, under the circumstances, is insignificant.

The degree of care required from the managers of a railroad in a highway, and of prudence on the part of one about to cross it, are proportioned to the danger of inflicting injury and the liability to incur it. The obligations of extreme care and of ordinary care, are to be construed with reference to the particular circumstances of the case. The language of a charge in respect to degrees of care or negligence is to be interpreted accordingly, and not in any abstract technical sense.

APPEAL from the Superior Court of the city of New York. Action for alleged negligence, by which the husband of the plaintiff (whose executrix she is) was run over and killed by a baggage train, on the defendant's railroad. The accident occurred in West street, in which the railroad tracks ran, at its intersection with Gansevoort street, in the city of New York. A sewer had been excavated in Gansevoort street across West street, and remained open on the east side of the last named street, so that it could not be crossed by carts; and on the west side of that street the passage was narrow and difficult, and some of the witnesses testified that it was impossible to pass over it. The deceased was driving his cart on West street below Gansevoort street northerly towards his home in the upper part of the city, about eight o'clock in the evening of the 28th August, 1853. It had rained, the night was dark, and there was no light at the intersection of West street with the sewer, from lamps or otherwise. No witness saw the accident. The cart of the deceased was found on the sidewalk near the south bank of the ditch, on the east side of West street, the horse being fastened; and the deceased was found lying across the rails and fatally injured by the cars having

Johnson *v.* The Hudson River Railroad Company.

passed over him in going north. The plaintiff's theory was, that being unable to get across the sewer on that side of the street, the deceased had left his horse and cart, and was cross-ing the track to ascertain whether there was a passage on the other side, and in the act of crossing was struck by the train. The negligence imputed to the defendant was that their cars were driven without any bells on the horses, or any light upon the cars, and at a high rate of speed. Several witnesses for the plaintiff swore there were no bells; but one of the servants of the defendant testified that he had charge of the horses of the line, and uniformly put bells on them, and thought there were bells on the horses of this train. The evidence was undisputed that there were no lights. It appeared that the water upon the rails prevented the noise from the cars being heard, but that the noise of the horses' feet could be heard a short distance. The deceased was not an intemperate man, and it was posi-tively shown that he was sober when he set out for home.

The defendant's counsel moved for a nonsuit on the ground that the plaintiff had not shown that the deceased himself was free from negligence, and also that negligence on his part was to be inferred from the facts proved. The motion was denied, and the defendant's counsel excepted.

The judge charged, amongst other things, that " considering the nature of the business in which the defendants were engaged, and the hazard attending the running of cars in the streets of the city, and particularly on a dark night, they were bound to exercise the utmost care and diligence; and for the purpose of avoiding accidents, endangering property and life, were bound to use all the means and measures of precaution that the highest prudence could suggest, and which it was in their power to employ. Hence," he said, "if the use of bells and of lights was a measure that the prudence and foresight they were bound to exercise ought to have suggested, and if by such use disastrous accidents would probably be avoided, the omission to use them, if proved to the satisfaction of the jury, was culpable negligence, and it was for the jury to say whether to this culpable negligence the fatal accident which

had given rise to the action might not justly be imputed."
As to negligence on the part of the deceased, the judge charged
that if the jury believed from the evidence that there was
any negligence on the part of the deceased that directly con-
tributed to the accident, the plaintiff would not be entitled to
recover. He also said that the deceased was bound to exercise
ordinary prudence and no more, and the question the jury
were to determine was, whether it appeared from the evidence
that there had been a want on the part of the deceased of that
care and foresight that men of ordinary prudence are accus-
tomed to employ, and which, placed in like circumstances with
the deceased, they probably would employ; and in judging
of the conduct and motives of the deceased, they were bound
·to consider all the circumstances of the case, as they had been
established by the evidence. The defendant's counsel excepted
to the several propositions in the portions of the charge that
have been given; and he requested the judge to charge that
the manner in which the deceased was found on the track was,
without explanation, *prima facie* evidence of negligence on
his part; and there was an exception to his refusal to give that
instruction. There was a verdict for the plaintiff for $4,000.
After an affirmance of the judgment at the general term, the
defendant appealed here. On a former trial in the Superior
Court, the plaintiff had been nonsuited. The report of the
decision setting aside the nonsuit is in 5 *Duer*, 21.

*William Fullerton,* for the appellant.

*Henry Morrison,* for the respondent.

DENIO, J. It is insisted on behalf of the defendants, that
the judge erred in refusing to hold as matter of law, upon the
facts proved, that the deceased was guilty of negligence; that
if any question upon that branch of the case could be left to
the jury, still he erred in charging that the negligence which
would preclude a recovery must be such as directly contributed
to the injury; and finally that he erred in his statement of the

Johnson *v.* The Hudson River Railroad Company.

measure of care and prudence required from the deceased and the defendants respectively.

First. The general rule has been so often laid down and reiterated, that to enable a party to recover in this class of actions, the person injured must not by his own negligence have contributed to the injury, that it must be considered a legal postulate. I agree that this is an element in the definition of the cause of action, and that the plaintiff's case, when presented to the jury, must not be defective upon that point, any more than upon that of the defendants' negligence. This is embraced in the proposition that the injury must be the result of the negligence of the defendants; for if the culpable conduct of both parties united in bringing it about, that proposition is not true. But I am of opinion that it is not a rule of law of universal application that the plaintiff must prove affirmatively that his own conduct on the occasion of the injury was cautious and prudent. The *onus probandi* in this, as in most other cases, depends upon the position of the affair as it stands upon the undisputed facts. Thus, if a carriage be driven furiously upon a crowded thoroughfare, and a person is run over, he would not be obliged to prove that he was cautious and attentive, and he might recover though there were no witnesses of his actual conduct. The natural instinct of self-preservation would stand in the place of positive evidence, and the dangerous tendency of the defendant's conduct would create so strong a probability that the injury happened through his fault that no other evidence would be required. But if one make an excavation or lay an obstruction in the highway, which may or may not be the occasion of an accident to a traveler, it would be reasonable to require a party seeking damages for an injury to give general evidence that he was traveling with ordinary moderation and care. The obligation to give such evidence would be greater or less according as the impediment was more or less dangerous. Thus, in *Butterfield* v. *Forrester* (11 *East*, 60), the defendant, in making some repairs to his house in a town, had put up a pole across the road, leaving however a free passage by a branch or street in the same

direction.   The plaintiff rode against it and was injured.   No question arose as to the *onus ;* but it being proved that he was riding immoderately, it was held that he could not recover. So in *Smith* v. *Smith* (2 *Pick.*, 621), the defendant had piled cordwood by the side of the highway at the foot of a hill, and one stick projected eight inches into the road.   The plaintiff in a dark night drove an overloaded wagon down the hill with· out any shaft-girth to the harness.   The wagon struck the horse and he ran alongside of the wood pile and against the projecting stick and caused an injury.   A verdict for the defendant was sustained by the court on the ground that the plaintiff's conduct had contributed to the accident.   There was no controversy here as to the *onus*, all the facts being before the jury.   If there had been no evidence of the circumstances, but only that the plaintiff had driven in the daytime against the stick of wood, and had been injured, although leaving the stick in that position was an act of negligence, still it might be reasonable to require the plaintiff to show that his carriage was properly equipped, and that he drove with ordinary cir· cumspection, and in such a case I conceive that it might be quite right to nonsuit the plaintiff for not having made out a case proper to be submitted to the jury.   But suppose the case of a dangerous excavation in a highway which a very prudent man might possibly avoid, but which he would be in great danger from, and a man was found to have fallen into it, the case being so situated that the precise circumstances could not be shown, must the plaintiff be nonsuited on the assumption of a positive rule of law requiring him to show affirmatively that the accident did not happen in part through his fault.   I think not.   The purpose of a jury trial is that the experience, intelligence and judgment of twelve men may be availed of to settle disputed questions of fact.   The duty of the judge pre- siding at the trial is the same in this class of cases as in others ; it is to determine whether a case is presented fit for the delib· eration of the jury.   This is to be decided, not by the applica· tion of any artifical rule respecting the *onus probandi*, but by considering the facts and circumstances in evidence in connec·

tion with the ordinary habits, conduct and motives of men. The culpability of the defendant must be affirmatively proved before the case can go to the jury, but the absence of any fault on the part of the plaintiff may be inferred from circumstances; and the disposition of men to take care of themselves and keep out of difficulty, may properly be taken into consideration. Nor is it correct to say as a universal rule that the defendant must himself prove, in order to establish his defence, that the plaintiff was guilty of negligence. That, as well as the absence of fault, may be inferred from the circumstances; and the negligent act of the defendant may be of such a mitigated character that a party complaining of an injury from it ought to show that it occurred without fault on his own part. This seems to me entirely consistent with the principle that the jury must, in order to find a verdict for the plaintiff, be able to say that the injury happened from the negligence of the defendant, to which the plaintiff did not by any act of his contribute. I have come to this conclusion, from the reason of things, and from general legal analogies; but I have not failed to look into the several cases to which we have been referred, and many others. It generally happens that the evidence on one side or the other discloses the material facts bearing upon the case, so that courts have not often been called upon to speak of the burden of proof as to the plaintiff's freedom from negligence. Besides the case of *Button* v. *The Hudson River Railroad Company* (18 *N. Y.*, 248), in the decision of which we were not sufficiently agreed to make it a lucid precedent, I do not find that the question has been considered in the English courts or in those in this State. Upon the rule as to what the case when fully disclosed must contain the authorities are abundant, but this does not settle the question as to the burden of proof. There are two cases in the Supreme Court of Massachusetts, apparently, if not really, in hostility to the conclusion which I have stated. In *Lane* v. *Crombie* (12 *Pick.*, 177), the defendant was sued for driving over the plaintiff with a two-horse sleigh in the highway, and the plaintiff had a verdict. None of the evidence is

given, nor any of the facts stated. It is merely said that the judge stated to the jury, in the course of his charge, that the burden of proof was upon the plaintiff to prove negligence in the defendants, that being the gist of the case; but that when the defendants relied upon the fact that the plaintiff conducted herself carelessly, the burden of the proof was upon the defendant to show that the plaintiff had not used ordinary care. This instruction was considered erroneous, and a new trial was ordered. The court said that in the actual state of the evidence it was extremely probable that the direction made no difference in regard to the result; still, it was added, if the evidence was such that the jury might have decided the other way upon this point without going decidedly against the weight of evidence, or in other words if the evidence was doubtful or balanced, such a direction may have had an influence to mislead the jury. Upon this I have to remark that in the absence of a statement of the nature and extent of the defendant's negligence, it is impossible to say what it was incumbent upon the plaintiff to show. If slight and not such as necessarily or probably to endanger a person on foot, then the plaintiff was bound to show that she did not by her own negligence bring the misfortune upon herself. I do not understand the court to hold that in all cases of injury from alleged negligence, the plaintiff must prove affirmatively that he was without fault; but that in the case before them it was necessary for her to do so. If the case goes further I think it cannot be sustained. The cases which the court refers to in its opinion are not upon the subject of the *onus probandi.* The case of *Adams* v. *Carlisle* (21 *Pick.*, 146), was an action against a town to recover damages sustained by the plaintiff by the overturning of his stage coach in consequence of alleged defects in the highway. The facts are not stated, but the charge of the judge was that the burden of proof was upon the plaintiff to satisfy the jury beyond a reasonable doubt that the overturning of the coach was caused by a defect in the highway and not by his own negligence, and for that purpose to show that he was using ordinary skill and diligence at the time when the

accident happened. The ruling was affirmed on a motion for a new trial. This, I think, was correct, if we assume that the defects shown to exist in the road were such as the driver of the coach in the exercise of ordinary caution could avoid. The court does not affirm that if there was no direct evidence as to the conduct of the driver, the plaintiff would necessarily fail; on the contrary, the Chief Justice remarks that proof that the person driving was commonly careful and skillful, that there was no apparent cause for the accident but the bad condition of the highway, and the condition in which the carriage was at the time, were all circumstances upon which the jury might pass their judgment, and infer that due skill and care were used.

The true rule in my opinion is this: The jury must even tually be satisfied that the plaintiff did not by any negligence of his own contribute to the injury. The evidence to establish this may consist in that offered to show the nature or cause of the accident, or in any other competent proof. To carry a case to the jury, the evidence on the part of the plaintiff must be such as, if believed, would authorize them to find that the injury was occasioned solely by the negligence of the defendant. It is not absolutely essential that the plaintiff should give any affirmative proof touching his own conduct on the occasion of the accident. The character of the defendants' delinquency may be such as to prove, *prima facie*, the whole issue; or the case may be such as to make it necessary for the plaintiff to show by independent evidence that he did not bring the misfortune upon himself. No more certain rule can be laid down.

The present case is not wholly free from difficulty, but I think it presented a fair question for the jury. Its determination depended upon the view which should be taken of the tendency of driving a railroad train at considerable speed through a city street, not lighted, on a dark evening, and without any proper means of giving notice to persons who might be upon the track, and without any lamps on the cars to enable the driver to see what might be on the rails before him. That

such running was hazardous in a high degree I cannot doubt. Then we are to consider that the railroad was at the same time a thoroughfare for persons on foot and with carriages, and that such persons might innocently be upon it at all times, save when the cars were actually passing, and also that at the point of intersection with Gansevoort street, West street was, upon one view of the evidence, substantially a *cul de sac* as to all purposes except the passage of the cars. The deceased was proved to have been perfectly sober on the night in question. The evidence left it to be inferred that he had been stopped by the excavation and the earth thrown up on its margin; and the inference was a probable one that, having fastened his horse, he was groping his way to the other side to see whether there was an outlet there when the cars came upon him. If the forward car had been suitably lighted in front it would have warned him, and at the same time have notified the driver; or if the horses had been provided with bells, it may well be that he would have heard them and have moved off the track. In the absence of proof to the contrary, we are to assume that he had the same regard for his own safety as other men, and the remark of the judge in his address to the jury that he could not have heard the cars was a reasonable suggestion. I think it fell within the class of cases which I have mentioned, of an act so eminently suggestive of dangerous consequences, that when we find that an accident has actually occurred, it is reasonable, *prima facie*, to refer it to the conduct of the defendants' servants without requiring further proof.

Second. Upon the question whether there was error in the instruction, that in order to exonerate the defendants on the ground of negligence on the part of the deceased, it must be such as *directly* contributed to the accident, I concur in the reasoning of Judge STRONG in the case of Button against these defendants, before referred to. I do not see that the term used was particularly significant; but as there was no conceivable negligence which could be imputed to the deceased which would operate remotely, or collaterally, or otherwise than directly, I am of opinion that the jury were not misled. The attention

of the judge was not specially called to the expression, as in the case of Button. In *Taff* v. *Warman* (2 *Com. Bench, N. S.,* 740), which was the case of a collision between two vessels, and the alleged negligence of the plaintiff was in not keeping a lookout and porting his helm when he found himself in danger of meeting the defendant's vessel, the judge charged the jury that if they were of opinion that the plaintiff by his own negligence *directly* contributed to the accident, they must find for the defendant; but that if they thought that the defend- ant directly caused the injury, they must find for the plaintiff. Much of the discussion on the motion for a new trial turned upon the use of the word 'directly;' the defendant's counsel contending that the instruction should have been that the plaintiff could not recover if he in any way contributed to the accident. The court however held in substance that the only way in which the imputed negligence could operate was direct, and that the instruction could not mislead, and a new trial was refused.

Lastly. In that part of the charge which relates to the degree of care required from the respective parties, the judge was not led to speak of the distinction between the duty which a carrier of persons owes to his passengers, and that which persons outside the carriage are entitled to claim from the carrier, but he was calling the attention of the jury to the peculiarities of the case before them. He did not in my opinion overstate the obligations which attach to persons running cars in the night over a course which is also a public street, in saying that they were bound to exercise the utmost care and diligence, and to use all the means and measures of precaution which the highest prudence could suggest. The degree of care required from persons driving vehicles upon a thoroughfare varies according to the circumstances of the case, and is proportioned to the danger to be apprehended of in- flicting injury upon others. The rule which would apply to ordinary carriages on common roads would be quite inade- quate as a test of that required from the managers of rail-

roads. (*Kelsey* v. *Barney*, 2 *Kern.*, 425; *Hegeman* v. *The Wes-tern R. R. Corporation*, 3 *id.*, 9.)

As to the party injured the rule is that he must have con-ducted with ordinary care and prudence, but he also must have regard to the particular circumstances of the case, and one who has a right to go across or upon a railroad track must exercise quite another sort of vigilance than a man who travels on a common road. This is what the judge meant when he instructed the jury that the question was whether the deceased used that care and foresight which men of ordinary prudence would probably employ when placed in like cir-cumstances. The defendants had no cause to complain of that instruction.

These views if concurred in will lead to an affirmance of the judgment of the Superior Court.

SELDEN, J., was absent; S. B. STRONG, J., doubted whether there could be a presumption in this case, that the defendant used any care whatever, and was disposed to reverse; all the other judges concurring,

Judgment affirmed.