McCunn, J.
I regret I am compelled to dissent in this case. The action was brought to recover damages for injuries sustained by the plaintiffs, from a collision between their canal boat (Ogden) and the defendants’ steam ferry boat (Abbie) on the 17th of January, 1857. The complaint alleges that the plaintiffs were not guilty of negligence, and that they in no way contributed to the collision; that said collision was caused wholly by the negligence of the defendants’ ferry boat. The rule is well settled, that before the plaintiffs can recover, these allgations must be clearly established on the trial below. The answer denies the allegations of the complaint, and insists that the accident was caused by the carelessness of the plaintiffs; so that, the two important questions that present themselves for our consideration, are: Was there negligence on the'part of the plaintiffs ? If not, was there such a degree of negligence on the part of the defendants, as to warrant the court in saying that they contributed to the accident? I shall endeavor to show, from the testimony, gross negligence on the part of the plaintiffs, and the entire want of negligence on the part 'Of the defendants ; and that consequently, on both of these grounds, the learned judge below was not *212 warranted in allowing either of these questions to go to the jury, but should have granted a nonsuit.
First. As to the plaintiffs’ negligence. The slip which' Kain (the plaintiffs’ captain) attempted to cross, was a place which the defendants’ steam ferry boats were constantly entering. and leaving; this was well known to him, because he had been lying on the south side of the ferry pier for some time previous, and knew the regulations of the boats as to their time of running. It is also established, that his attempt to haul the canal boat across the ferry slip, and across the track of the steam ferry boats, was in the night, after sunset, and that in so doing he had no signal lights on his boats. Plis is the testimony of the plaintiffs’ witnesses. The witnesses testify that the night was a dark one; it must be presumed, therefore, that the captain of the canal boat knew the peril and imprudence of thus using his boat in the darkness, for, when he commenced hauling, it is in evidence that he told the men to hurry, for fear the ferry ho,at would come on him;
The sun set on that day at one minute before five o’clock; a time when darkness, almost immediately follows. Kain (the captain) says it WPS twenty minutes past six when he. ran to look for men to take off the deck load, which was instantly after the boat struck; it is, therefore, certain that he moved his boat after sunset and after dark. Moreover, it is ip evidence, on the part of the plaintiffs, that it is .unusual for vessels to haul across slips after dark. Yet, in the face of all this knowledge on the part of the plaintiffs’ captain, he not only took the unusual course of hauling this loaded barge across the slip after dark, but did so without displaying any light of any kind to the approaching ferry boat; although the navigation laws require all shipping moving in the harbor or lying in the stream to hoist at sundown, and keep hoisted until sunrise, signal lights.
Under these circumstances, the plaintiffs, in hauling their boat across the slip without displaying the usual signals, were guilty of gross carelessness and bad management; but *213 the negligence of the canal boat captain did not end here, for he himself testifies that he did not make any signal whatever to the ferry boat, although he saw her approaching from the time she left the Brooklyn shore, which was the time he commenced to haul across the slip; nor did he, when he saw the ferry boat come down upon the canal boat, do any thing to prevent a collision. He had been loading his boat for a day or so alongside of this slip ; he saw the frequency of the ferry boat’s trips; it was his bounden duty therefore to notify the pilot of the steam ferry boat, of his intention to cross the slip, previous to doing so.
On such a state of facts—facts shown by the plaintiffs themselves, it is impossible to say that the conduct of the plaintiffs was free from fault or negligence contributing to the accident; on the contrary, it is quite clear that it was through their carelessness, and theirs alone, that the injury happened. The court, under these circumstances, did not require the aid of a jury to ascertain or determine such negligence, it being patent without their aid. On this' point alone the case should have been withdrawn from the jury.
Second. As to the carelessness .of the defendants: The ferry boat was running at fixed and certain intervals, from a certain place to a .certain other place; it is admitted that she was in the strict line of her duty; and it is in evidence by the defendants, and not contradicted by the plaintiffs, that every precaution was taken on the part of the crew and pilot of the ferry boat to guard against accident. She was duly and abundantly lighted; she was, as the counsel for the defense forcibly expressed it, “ a blaze of light,” so that her approach could not be unawares on any vessel; and she had in addition to all this a separate lookout at the front of the ferry boat to aid the pilot, both of them watching to take her over with safety to herself and passengers, and to other vessels. Not one word of all this testimony is contradicted by either the plaintiffs’ or defendants’ witnesses. It is also in evidence on the part of *214 the plaintiffs, that the canal boat was down in the water so low that she presented little surface; and that her deck load, being white sacks of'salt, in the darkness could not be distinguished from the surrounding ice, so that as the pilot testi- - fies that when he first saw her- he supposed her to be a mass of ice. When he discovered his mistake, no promptness,' exertion, or precaution were omitted by him or the crew of his boat, from the instant the canal boat was discerned in the darkness; he immediately stopped his engine, reversed' the wheels, and backed the ferry boat. Under these circumstances, I am unable to discover a single act of carelessness on the part of the defendants.
One question touched upon is, whether the occurrence was after dark or not. That it' was after sunset is not denied; and that all the night lights in the harbor, with the exception of this canal boat’s light, were displayed, was established by the plaintiffs themselves. If no other fact than this was shown, their omission to display a light was gross carelessness on their part. The plaintiffs’ own witness, Gillen, testifies that it was in the night; this is also shown by the pilot, (Shepherd,) the lookout, (Cole,) the bridgeman, (Brown,) and the carpenter, (Goodrich.) It is absurd to suppose that all these witnesses, including the pilot, and the lookout, within a few yards of the slip, which, they were aiming to reach, carefully looking ahead, would not have seen the canal boat. had it been light enough to see her. Goodrich testifies that he was' on the bow of the boat, and could not see her until the stopping and backing of the ferry boat. In addition to this testimony we have, as I have said before, that of the plaintiffs’ witness, Gillen, to the effect, that “it was in the night.” Some of the witnesses on the part of the plaintiffs guess, after the lapse of ten years, as to the time of the clock. This is only .guesswork, and is entirely immaterial. Whether it was day or night, is the question, and this is a fact they might well remember; is the most important fact; the hour by the clock is a matter of very little consequence, *215 and is entitled to little consideration. Nothing is less prohable than that any of the witnesses noticed the hour or ■minute of the occurrence, by the clock; conjectures on such a point," at the end of ten years, are entitled to little credit. The plaintiffs, by their gross carelessness, contributed largely to the collision, and I have satisfied my own mind that no carlessness was shown on the part of the defendants.
Congress passed an act, approved April 29, 1864, declaring that on and after September, 1864, certain rules and regulations concerning the exhibiting of lights to prevent collisions in our waters; among other regulations therein set forth, it declared that all lights-shall be displayed at sunset and be kept up to sunrise. This act was simply the reaffirmance of a long series of adjudications made by the courts of this and other countries, fixing the time for displaying lights at sundown. The laws of this state, (Laws of 1826, p. 284, § 5,) regulating the displaying of lights declares, that at night, signals shall be hoisted; and the courts have held under this law, that night began at sunset and continued to sunrise. (Durant v. Rea, 18 How. U. S. 225. Ure v. Hoffman, 19 id. 56. Culberton v. Shaw, 18 id. 586.) None of the plaintiffs’ witnesses say the collision took place before sunset; all say it was after sunset; at least half an hour after; some of them say it was dark. All the witnesses for the defense say, most positively, it was some considerable time after dark; from half past seven to eight o’clock. Can any one doubt that if the canal boat had displayed a light, the steamboat would have discovered her position, and the accident would have been prevented? Where a light may aid in preventing a collision, the party neglecting to exhibit the light should be held responsible for the fault. This was the doctrine held by Judge Greer in the case of the Osprey, (2 Wallace, 274.)
•A party cannot- recover, unless it appear that he was entirely free from any degree of negligence which contrib *216 uted to the injury; and the greatest negligence on the part of the defendant will not cure the defect of the least negligence contributing to the injury on the plaintiffs’ part. (Wilds v. Hudson River R. R. Co., 23 How. 492. Haring v. New York and Erie R. R. Co., 13 Barb. 9. Munger v. Tonawanda R. R. Co., 4 Comst. Kelsey v. Barney, 2 Kern. 425. Griffin v. The Mayor, &c. 5 Seld. 456.) In the case of Johnson v. The Hudson River Railroad Company, (20 N. Y. Rep. 65,) the learned judge delivering the opinion of the court, says: “ As to the party injured, the rule is that he must have conducted -himself with ordinary care and prudence, but he must also have regard to the particular circumstances of the case; and one who has a right to go across or upon a railroad track, must exercise quite another sort of vigilance than a man who travels on a common road.” The same rule of law will apply with more strictness to the- one at bar. A person navigating a river known to be much frequented by other craft, should be bound to keep a strict lookout in order to avoid injury to others, which he would not be bound to do while navigating unfrequented waters. The learned judge below should have granted a nonsuit, because there was no disputed fact to go to the jury. For these reasons, I am decidedly for reversing the judgment and ordering a new trial.