By the Court.—Sedgwick, J.
The court took from the jury all questions in relation to the corporate character of the Pacific Beater Press Co., and *474 decided them adversely to the defendant. The defendant claimed that the evidence showed that the company was not a corporation defacto or de jure. It was not the latter, beyond doubt, and the most favorable view for the plaintiff would be, that there was such a user of corporate functions and rights un der color of a due organization, as a corporation, as to make what is called a de facto corporation. The cases hold that acting as a corporation, for any length of time, not being sufficient to make a corporation, it is necessary to show a charter or law which of itself creates, upon its acceptance, a corporation, or if the law provides that a corporation may be formed upon a subsequent compliance with prescribed regulations and forms, that some of those regulations and forms must have been observed, although others have been omitted. How much must be done to make/a colorable charter, or how much may be omitted, it has not been found necessary in the cases to decide. In the cases to which our attention has been called, the defect was of minor importance. Most of the steps had been taken, and it has generally been called an irregularity. What particular step in the process, designed by law to be complete wholly, is essential, and what may be deemed not essential, has not been decided. Judge Selden said, in Methodist Epis. Un. Ch. v. Pickitt (19 N. Y. 486): “ The rightfulness of its existence not being in issue, of course evidence of any irregularity or of defects in its organization, short of such as would show a want of good faith on the part of those concerned in the proceedings, would be wholly irrelevant. If the lawr exists, and the record exhibits a bona fide attempt to organize under it, very slight evidence of user be-, yond this is all that can be required.” In Eaton v. Aspinwall (19 N. Y. 119) the defect was not in the record, but was a want of a payment of a percentage of. capital which the law required, before the incorpo *475 ration should be complete, and the court below gave importance to that. If the facts had been reversed, and the only evidence of an attempt to incorporate had been an organization of individuals, as if they were a corporation, and a payment of the percentage of capital as the capital of a corporation, I doubt if it would be deemed sufficient, even with acts of user, to make a corporation defacto.
The court further said, in the Methodist Episcopal Church v. Pickitt, that the degree of proof of user required depended, “to some extent, upon the nature of the incorporation and the law under which it is organized. Where no provision is made for any permanent evidence of the fact of organization, more proof of user would be required than where, as in this Case, the essential steps by which the organization is accomplished are required to be made matters of record.”
I have come to the conclusion that the filing in the office of the secretary of state, of the certificate- of association, was sufficient, with due proof of user, to show the corporate character of the company fór the purposes of this action. I hesitated much, because though no more is needed than mere color of an incorporation, the filing of such a certificate seems so insignificant in its character, under the statute, as hardly to be a single step towards the formation of a company. On its face and by itself, it is not anything called for by the statute. It was not, and it did not, profess to be a duplicate of a certificate filed in the county clerk’s office. Yet, unless it is treated as if it were a duplicate, the proof is, that there was nothing done towards an incorporation, and there would not be any color even of existence under an incorporation. It is, however, such a certificate as would be filed if it were a duplicate, and if there was an attempt to make an incorporation; and its contents are so expressive of such a purpose on the part of the associates, that I deem it sufficient, if there *476 had been proof of user under it. Evidently the acts to show user must in their nature be corporate acts, or such as would be corporate acts if the attempted incorporation had been perfected, and they must be unequivocally such. The corporation de facto must be proved. The testimony to prove it must be certain, not speaking as much for non-incorporation as for corporation. In substance, user consists in an enjoyment and exercise (although not rightful) of such corporate franchises and powers as would be given by the law to an association if the attempted organization had been perfected. The contrast to that is, that acts of individuals which would not be corporate acts, if there were a charter, will not be acts of user. The acts must at least appear to be the acts of the association not rightfully incorporated, and the acts must be such as would be within the objects of the incorporation, as stated in that part of the proceedings under the statute, that have been, in fact, taken. The law does not intend, in its due protection of third parties, to encourage the existence' of associations assuming to be the grantees of the sovereign power of the state without authority of law. Third parties deal with associations which may be partnerships or may be corporations, and must depend upon the facts to show which they are, while they are not held to a close or critical examination of the efficiency of the steps taken to accomplish a legal incorporation.
And it should further be said that when the contest is between third parties, as in the present instance, and the incorporation has not been completed according to law, user will not make a corporation defacto against a person who does not take any part in their acts of user, and especially not against one who has done all in his power to prevent business being done under the illegal charter.
Excepting the issuing of certificates of stock to sev *477 eral persons, and, among them, to the defendant, the acts relied upon to show user (at least, as the jury might have found, in those instances where the testimony was. not certain) were acts before the first and only thing was done in the legal formation of a company, viz., filing the certificate in Albany, or were acts not shown by the plaintiff to be within the objects stated by that certificate, or were acts done by persons not shown to be acting within the scope of any authority conferred by the association.
The acts, at the meetings that took place before the certificate was filed, were not done in the exercise of any pretended franchise. On their face they referred to an incorporation afterwards to be formed. They were not ratified by any action in relation to them after the certificate was filed. After that no meetings were held, and no attempt to continue any organization. These acts could have hhd in themselves no tendency to lead third parties to believe that a corporation had been formed. The supposed purchase of the presses which were sent to California was not, indeed, proven upon the trial. Whether the purchase was made by the president as an individual, or representing the company, did not in any manner appear. Granting that he had power given by the association to make purchases for the furtherance of its objects, there was no proof that he bought the presses in the exercise of that power. He had full power to purchase for himself, and not for the company. There is no proof that the articles purchased were such as could be used for any of the objects stated in the certificate. Purchasing presses was not stated to be one of the objects. Certificates of the " company’s stock were issued as if in payment of a purchase for the company. That is the single fact to show that the purchase was by the company, but no authority had been given, before or after the filing of the certificate, to use the stock for such a purpose. *478 These presses were not shipped to California in the name of the company. Therefore I think the proof did not show that the presses were the property of the company or bought for the company, and the alleged purchase does not show any use of corporate.powers.
The gist of the cause of action is that the company requested the plaintiffs to pay freight on and to store the presses referred to. If there were such a request it was made by the mouth of Davis, in San Francisco. At the best for plaintiffs, he was then agent for the association. He had been present at a preliminary meeting in Hew York, and had there heard that he was appointed their agent for California, and at the time the presses arrived in California he had in his possession the circular, the particulars of which have been, given, and we will assume that in some way he had the powers of a general agent. It should, however, be said that there was no proof that the association at any time sent the circular to him, or directed it to be sent, or intimated to him that he was to enter upon the exercise of any powers as agent, and he never did any business of the company. There was only a resolution to appoint him agent, not thereafter acted upon. The facts were, then, that the presses did not belong to the company (or at least the jury might have so found), were not bought for the company, were not shown to be suitable to the business of the company, or to further any of its objects. Therefore any dealings in respect of them by Davis were not within the scope of any authority given to him by the association. In what way the plaintiffs or Davis' were led to believe that the presses were the property of the company is not proven. They both thought so, but not by reason of any communication from the asso- - elation, or from any one who by the testimony even assumed to act for it. There was evidence that Davis had been advised of the shipment by the gentleman named at a preliminary meeting to be the secretary and *479 treasnzer. There was no testimony that this advice .stated that the shipment was for the company. The bills of lading stated the shipment was by Leland individually. The notice of the consignees of the ship to Davis stated the same. The answer of Davis, in writing, to that notice did not refer to the company. If, then, Davis did not act in reference to any business of the company, what he did was not an act of user by the company. The plaintiff took the usual risk in dealing with an assumed agent in respect of his act, being one of user on the part of his alleged principals, or as creating a liability on their part.
We now consider whether the issuing of certificates of stock was an act of user under the facts of this case. The time when they were issued does not appear. Neither side attempted to show the time.
In Black River & Utica R. R. Co. v. Clarke (25 N. Y. 208), the judge giving the opinion said, that a subscription to take stock in a company was, in an action upon it against the subscriber, conclusive evidence of the corporate character of the company. The court said, “he is estopped by his own acts and admissions ” from denying that corporate character. The court relied upon what was said by Thompson, Ch. J., in regard to contracts in general entered into with corpora tions, in Dutchess Cotton Factory v. Davis (14 Johns. 245), notwithstanding that this was questioned in Welland Canal Company v. Hathaway (8 Wend. 480). This decision was, in fact, also questioned in Williams v. Bank of Michigan (7 Wend. 541), by the chancellor. The court below, in Black River, &c. v. Clarke had made no ruling which called for a decision as to the conclusive character of the admission. The plaintiff below had given in evidence only the subscription paper, and the question was whether it contained enough evidence of the existence of the corporation to prevent a nonsuit. The subscription' paper *480 stated that the company had been formed, under the law of the state entitled, &c., and that the articles of association, with the necessary affidavits, had been filed. If this was a. competent admission by the defendant of the existence of the corporation, the motion for non-snit was properly denied.
At the next term of the court of appeals, it decided Buffalo & Alleghany R. R. Co. v. Carey, 20 N. Y. 75. The action was upon a subscription by defendant’s intestate to the stock of the plaintiff. The form of the subscription paper is not given. It was probably unlike that set out in Black River, &c. R. R. Co. v. Clarke. Ho opinion of the majority in the court of appeals was given, and the opinion of the court below is published "in the report. In view of the deductions to be made from the dissenting opinion of Judge Allen, it is difficult to see on what grounds the court, of appeals went in affirming the defendant’s obligation. Perhaps the acts of user subsequent to the subscription were considered sufficient. But I can not see that the court of appeals decided that subscriptions estopped the subscribers from denying the incorporation.
In Eaton v. Aspinwall (19 N. Y. 121), while the judge delivering the opinion treated the fact as important that the defendant was a stockholder, he did so only in connection with the main ground, that there was sufficient proof of user. The defendant not only holding the stock, but receiving dividends upon it, furnished two considerations, 1st, it showed he participated in the acts of user ; 2d, it illustrated the equitable ground of the rule, that user, under- an. imperfect organization,'’might, in favor of third parties, make a corporation defacto. I can not. see that the court meant to declare as a rule, that a holding of stock formed an estoppel. If there were such a rule, *481 it was not necessary to show any other acts of user, or any attempt at an incorporation.
The issuing of stock should be looked upon, as bearing upon the enquiry, whether in fact it shows sufficiently that corporate franchises were used. If it were issued and received in connection with other corporate proceedings, purposely taken, to exercise corporate powers under an attempted organization, the evidence given by the issuing of the stock would be strong. In the present case, the issuing of the stock, and the receipt by the defendant of a part of it, were isolated acts not accompanied by any other use of corporate powers. All that was done in respect thereto was cotemporaneous with their acts, which the jury might have found formed a disclaimer on the part of the defendant, and even of the most of the associates, of any intention to take part in the further prosecution of corporate business. And at this point we see that, on general principles, there is a Ioqus penitential at which it is not too late to stop, in order not to enter upon a violation of the law. Even if the purchase of presses had been made in behalf of the association, nothing else being done but the issuing of the stock, the manner in which that stock was dealt with, the jury might have found, was significant to show that no corporate privileges were meant to be used.
The defendant testified, that the business of the company not having begun, and, indeed, nothing having been done but the issuing of the stock to him, he expressed the determination to have no further' connection with the affair, and handed the stock to some person with whom he had had some undisclosed bargaining. The whole evidence, however, was such that the jury might have found that this act was nothing but an endeavor to do what was just, in respect of the interests of such third person, but not as recogniz ing the existence of the corporation.
*482 The defendant having signed the articles of association which named him as trustee, only held him to the obligations of an officer to carfy on the corporate business, provided such use was made of the paper as was designated by its character, viz., that it was to be used to form a corporation de jure.
On the whole case I think there were facts from which the jury .would at least have had a right to find that there had been an intention to form a corporation, that before that was carried out, the defendant and others refused to proceed further, that thereupon certain individuals took up the affair and attempted without authority to act for the association, that, in fact, had no existence after the refusal, and that the defendant had done nothing which estopped him from denying the existence of the incorporation. On this ground, as well as on the other grounds, that the facts do not indisputably show for whose account the presses were purchased, nor that a purchase of such presses was within the objects declared in' the articles of association that was filed, or that Davis was the agent of the supposed association in the matter in dispute, I think there should be a new trial, with costs to appellant to abide event.
Curtis, J., concurred.