GEORGE SCHWANDNER, AS ADMINISTRATOR, ETC., OF PETER SCHWANDNER, DECEASED, APPELLANT, v. MARTIN H. BIRGE AND OTHERS, RESPONDENTS.

*Duty of the owner of a factory to furnish means of escape in case of fire — when he is liable for an injury occasioned by his failure to do so — what risks are not assumed by a servant when entering into the employment of a master.*

The plaintiff's intestate, who was about nineteen years old, was employed by the defendants in their wall paper factory in Buffalo. The building was of brick and five stories high. Workmen were employed on each floor, and the intestate passed from floor to floor in discharging his duty, which was to pick up and carry away scraps of paper. The fifth story was divided into two rooms by a partition, containing openings through which the employes could pass. In each room was an elevator (not used, however, for the carrying of workmen). In the front room there was a stairs leading down to the fourth floor, and a scuttle in the roof, but no ladder to reach it. In the rear room was an iron door leading to the roof of an adjoining building. A fire broke through the fifth floor not far south of the scuttle and set fire to rolls of paper which were hung up in that story to be dried. The fire spread rapidly, cutting off escape from the back room, the stairs and iron door, and a number of the employes of the defendant at work upon that floor were burned to death. Among them was the plaintiff's intestate. An ordinance of the city required every building more than one story high to have a scuttle through the roof and a convenient and suitable stairway or ladder leading to the same.

*Held*, that the question as to whether the defendant was not guilty of negligence, in failing to provide sufficient means of escape from the fifth floor in case of fire, and particularly in not furnishing a stair-case or ladder leading to the roof, and whether such omission did not cause the death of the intestate, should have been left to the jury.

That the question whether or not the intestate, when entering into the employment of the defendants, took the risk of injury which might arise from the omission of the defendants to furnish adequate means of escape in case of fire should also have been submitted to the jury.

That the court erred in granting a nonsuit.

APPEAL from a judgment of nonsuit, ordered at the Erie Circuit.

*Adelbert Moot*, for the appellant.

*James M. Humphrey*, for the respondents.

SMITH, P. J.:

The complaint is for negligently causing the death of the plaintiff's intestate, Peter Schwandner, who was an employe of the

defendants in their wall-paper factory in the city of Buffalo, at the corner of Perry and Indiana streets. The factory was destroyed by fire on the 17th of December, 1880, and the intestate lost his life in the flames. The evidence tended to show the following state of facts : The factory was a brick building, five stories in height, and workmen were employed on each floor. The deceased was nineteen years old, healthy, worked every day, lived with his parents and contributed his earnings to their support. He had no stationary place of employment in the factory; his business was on every floor, and in every part of the building, carrying away scraps of paper. The fire broke out just before six o'clock in the afternoon. About half an hour before the fire broke out, the intestate was seen on the fifth floor and was not seen alive by any of the witnesses afterwards. The testimony would have warranted the jury in finding that the intestate was on the fifth floor when the fire broke out, and that he there perished.

The alleged negligence of the defendants consisted in not providing sufficient means of escape from the fifth floor in case of fire, and particularly in not furnishing a stair-case or ladder, or other means of access to the scuttle in the flat roof, which was immediately over the fifth floor and about eleven feet above it. The fifth story was divided into two rooms by a partition, in which were open spaces through which the workmen could pass. In each room was an elevator, which, however, was not used as a means of passage for the workmen. In the room fronting on Perry street was a stair-case, descending to the fourth floor, and from that floor two stair-cases led to the ground floor. In the rear room was an iron door opening on to the flat roof of an adjoining building, known as Tifft's pattern shop, but egress by that door was impeded somewhat by iron cog-wheels piled against it. The fifth story was used as a drying room, and was kept at a temperature of about 100 degrees, and in it was suspended a large quantity of dried and drying paper. When the fire broke out there were about twelve boys at work in each room on the fifth floor. The fire first broke through the fifth floor about four or five feet south of the scuttle. It communicated instantly with the hanging paper and spread so rapidly that it almost immediately cut off those in front from access to the back room, the stairs and the iron door. Of those in the front room, one only

escaped through the iron door and one went down the stairs. All the others who were in the front room were lost. All who got upon the roof of Tifft's shop were saved, and none were lost who were on any other floor than the fifth. An ordinance of the city, authorized by the charter (Laws 1870, p. 1180, ch. 519, § 8, sub. 4), requires that " every building more than one story in height, in the city, should have a scuttle through the roof and a convenient and suitable stairway or ladder leading to the same."

We are of the opinion that the evidence required the submission to the jury of the question whether the omission to provide a suitable and convenient means of access to the scuttle was negligence on the part of the defendants, and whether such omission, if negligent, caused the death of the intestate.

The respondents' counsel suggests that the ordinance referred to was intended rather to provide for firemen a means of access to the roof than a means of escape to those within the building in case of fire. However that may be, we think that independently of the ordinance, the question was presented whether, in view of all the circumstances shown by the evidence, the defendants had used due care in providing suitable means of escape for their employes in case of fire.

It is also suggested that the evidence shows affirmatively that if there had been a stairway or ladder leading to the scuttle the intestate could not have escaped that way by reason of the fact that the fire was immediately communicated to the paper hanging underneath the scuttle. But in that case it would have been for the jury to say whether the respondents were not required, in the exercise of due care, to so place the drying paper as to leave the passage to the scuttle accessible in case of fire, and whether their omission to do so was negligent.

It is contended by the respondents that the deceased entered the employment of the defendants with full knowledge of the condition of the building, and he must therefore be presumed to have taken the risks arising from such condition, and for that reason cannot recover. Doubtless the general rule is that the employe loses the right of action when he voluntarily and unnecessarily puts himself in a place of danger. (Whart. on Neg., § 215.) So, too, it has been held that if a servant accepts service with knowledge of the

character and position of structures from which employes might be liable to receive injuries, he cannot call upon the master to make alterations, or in case of injury hold him liable. (*Gibson* v. *Erie R. R. Co.*, 63 N. Y., 449; *Owen* v. *N. Y. C. R. R. Co.*, 1 Lans., 108.) But those rules apply only to the natural and ordinary risks incident to the work in which the servant engages, and the perils which in legal contemplation are presumed to be adjusted in the stipulated compensation. The fact that the intestate knew that there was no staircase or ladder leading to the scuttle was not, under the circumstances and as matter of law, conclusive evidence of want of due care on his part. As was said by Mr. Justice BYLES, in *Clarke* v. *Holmes* (7 Hurlst. & Nor., 937), "a servant knowing the facts may be utterly ignorant of the risks." It was held in *Coombs* v. *New Bedford Cordage Company* (102 Mass., 572) that "the fact that very near where a workman is voluntarily employed in a manufactory, machinery not connected with his work is in motion, the dangerous nature of which is visible and constant, is not conclusive that he has taken on himself the risk of being injured by it, in modification of the implied contract of his employer to provide for him a reasonably safe place in which to do his work; and if through inattention to the danger he meets with such an injury while doing his work and sues his employer therefor, the questions whether he met with it with due care on his own part, and by reason of the neglect of his employer to give him suitable notice of the danger, are for the jury."

In this case the danger from which the injury to the intestate resulted was not a natural and ordinary risk incident to the work in which he engaged. His employment did not require him to be at all times on the fifth floor, but it took him into all parts of the building. Assuming that he was in the fifth story when the fire broke out, the fact that he was there at that time was, in a measure, accidental. Nor can it be presumed, as matter of law, that this lad, nineteen years old, when he entered the employment of the defendants, took into consideration the risk of the fatal disaster that after-wards befell him, and that his compensation was measured accordingly. We think that under the circumstances the question whether the intestate took the risk of the danger referred to was one of fact to be decided by the jury.

The respondents' counsel contends that as the burden is on the

plaintiff of showing that there was no want of due care on the part of the deceased, and there is no proof of the circumstances immediately attending his death, the plaintiff was properly nonsuited. Upon the assumption that the deceased was in the front part of the fifth story when the fire broke out, the proof in the case justifies the inference that he came to his death by reason of the fact that he had no way of escape, and not from any want of care on his part. In *Johnson* v. *The Hudson River Railroad Company* (20 N. Y., 65), which was an action for negligently causing the death of plaintiff's intestate, where there was no witness of the occurrence, it was held that the absence of fault on the part of the deceased may be inferred from the circumstances in connection with the ordinary habits, conduct and motives of men; that the character of the defendant's negligence may be such as *prima facie* to prove the whole issue, and the known indisposition of men needlessly to expose themselves to difficulty and danger is to be considered in determining the question. The same doctrine is recognized in many later cases, among which are *Morrison* v. *The New York Central and Hudson River Railroad Company* (63 N. Y., 643); *Willy* v. *Mulledy* (78 id., 310); *Hart* v. *Hudson River Bridge Company* (80 id., 622); *Mahony* v. *City of Buffalo* (decided by this court in December, 1881, and not reported; S. C., affirmed, 91 N. Y., 657), and *Cassidy* v. *Angell* (12 R. I., 447). The question is not free from doubt, but on the whole we are of the opinion that the case should have been submitted to the jury.

The judgment should be reversed and a new trial ordered, costs to abide event.

HARDIN, J., concurred; BARKER, J., not voting.

So ordered.