DONALDSON *et al.*, Administrators, v. THE MISSISSIPPI AND MISSOURI RAILROAD COMPANY.

1. **Corporation: WRONGFUL ACTS.** Under § 4111 of the Revision of 1860, a corporation is liable in a civil action for the wrongful acts of its servants, done in its employment, and producing death.

*Arg.* 1. **Master and servant: TORTS BY SERVANT.** While the master is not liable for all the torts of his servants, he is liable for those which are done in his service.

2. **Corporations: INDICTMENT.** Corporations are indictable for acts of misfeasance as well as non-feasance.

3. —— CRIMINAL ACTS. A corporation may be guilty of criminal acts for which it may be held liable in a civil action.

Donaldson v. The Mississippi and Missouri Railroad Company.

2. **Master and servant:** CO-SERVANTS. A sub-contractor for the building of bridges on the line of a railroad is not a co-servant of those employed by the corporation in operating the road and managing the trains thereon; and is exempt from the rule of *respondeat superior* as to injuries negligently inflicted upon him by such servants of the company.

3. **New trial:** CONFLICTING EVIDENCE. Where the evidence in a case upon a question of negligence is conflicting, and is properly submitted to the jury, under instructions which could not have prejudiced the parties, the verdict will not be disturbed by the appellate court.

4. **Evidence:** NEGLIGENCE. In an action against a railroad company for wrongfully killing the plaintiff's intestate by running cars over him while crossing their track, it is incumbent on the plaintiff to show by direct testimony, or by presumptions arising from facts and circumstances, that the deceased was, at the time, rightfully and not negligently or improperly upon such track.

5. ——— ORDER OF: DISCRETION. Applications to introduce new evidence in chief after the parties have rested, are addressed to the discretion of the court, the exercise of which will not be reviewed by the Supreme Court in the absence of an abuse of such discretion.

6. **Measure of damages:** DEATH. In an action for the wrongful killing of a person, the jury may find such damage as the estate of the deceased suffered pecuniarily by his death; but they should not allow anything on account of his pain and suffering by reason of the injury before his death, or for the grief and distress of his family on account thereof, or for the loss of his society. And when thus instructed, evidence may be submitted to the jury showing the exact situation of the deceased, his occupation, annual earnings, age, health, habits and estate, as affecting the question of damages.

7. **Evidence:** EXPERT. An experience of six months as agent of a life insurance company will not qualify a witness to testify as an expert as to an expectation of life at a certain age.

8. ——— LIFE TABLES. The Carlyle Life Tables being standards upon the subject of which they treat, are admissible in evidence for the purpose of showing the expectation of human life.

*Appeal from Johnson District Court.*

FRIDAY, APRIL 7.

THIS is an action to recover damages for the death of plaintiff's intestate, alleged to have been produced by the

wrongful act of the defendant. The testimony is voluminous and conflicting. The facts established, and which are necessary to properly present the questions determined, may be stated in substance as follows: On August 16, 1860, the deceased and his partner, who were sub-contractors for the building of one or more bridges for defendant, had been engaged, with others in their employ, loading bridge timbers on defendants' cars at the depot in Iowa City. After they had finished loading the timbers, which was done on the south side of the depot, the deceased with his partner and four or five others, started to go across the several tracks to the north side of the depot to assist another person in loading a wagon on a car.

The defendant, by its employees, was engaged in making up a freight train for the west, and in clearing the main track for the arrival of the train from the east, then nearly due; and had been so engaged most of the time the deceased and others were employed loading timbers. Just before the deceased and others had started to go for the wagon, the depot engine, with its train of one or more platform and six or more box cars, all heavily loaded with railroad iron, &c., had passed along one of the interior tracks, going east through the depot and on an ascending grade to the switch, and, unobserved by those accompanying the deceased, had been switched on to the north track, and was being pushed west along that track down the grade at a greater speed than usual. There were about three platform cars standing on the north track, a short distance from the west end of which the deceased and the others were just in the act of crossing, when the platform cars were struck by the train and driven with great speed along the track, running over the deceased's limbs and body, and so injuring him as that he died in a short time. There were no signals given by the whistle or bell, although such signals were used generally on the depot and yard. One

of the company was just ahead, and another just behind the deceased, both of whom barely escaped, and the others of the company were just in the act of crossing, and none of them had observed the train, or had any intimation or knowledge of its approach, until the noise made by the box cars of the moving train hitting the standing platform cars, which shot off at such speed as to render it impossible for the deceased, who was about the middle of the track, to escape.

There was a trial by jury; a verdict for fifteen hundred dollars for plaintiff; and judgment thereon, from which defendant appeals.

*Edmonds & Ransom* and *Cook & Drury* for the appellant.

*Clark & Brother* and *Clarke & Davis* and *G. Folsom* for the appellees.

COLE, J.— I. At common law, no right of action for the recovery of damages existed against one who had caused the death of another. This rule was founded partly upon the theory that the civil remedy was merged in the public offense. Our statute has changed this rule, and provides (Rev., § 4110 [2500] ), "the right of civil remedy is not merged in a public offense, but may, in all cases, be enforced independently of, and in addition to, the punishment of the latter." Rev., § 4111 (2501): "Where a wrongful act produces death, the perpetrator is civilly liable for the injury * * * * *."

1. CORPO-
RATION:
wrongful
act.

The English statute, which was enacted before ours, provides that, "when death shall be caused by the *wrongful act, neglect or default*, such as would (had death not ensued) have entitled the party to an action, an action may be maintained," &c. The New York statute, passed a year after the English, also expressly includes cases of neglect

and default, and makes the employe, through whose wrongful act, neglect or default the death was caused, liable to indictment, &c., as for a felony.

Aside from the express requirement of our Revision, that "its provisions, and all proceedings under it, shall be liberally construed, with a view to promote its objects, and assist the parties in obtaining justice" (Rev., § 2622), we should have no serious difficulty in holding that any action could be maintained under our statute which could be under the English or New York law. In view of such express rule of construction, the question is more free from doubt.

While an employer is not responsible for all the torts of his employe, and certainly not for those of which the employe is guilty when they are entirely aside from his service, and have no connection with his duties, yet the general principle is, that the employer is responsible for the tortious act of his employe *which was done in his service.* 1 Pars. on Cont., 87. And an action for a wrong lies against a corporation, when the thing done is within the purpose of the incorporation, and it has been done in such a manner as to constitute what would be an actionable wrong if done by a private individual. *Green* v. *The London General Omnibus Co.,* 6 Juris., N. S., part I, 228, cited in 8 Am. Law Reg., 702. That a corporation may be liable for the wrongful act of its servants, as well as for their neglect and default, is clear, upon both principle and authority. A corporation is an attribute of individuality, conferred upon a collective and changeable body of persons; and while, by the favor of the law, this artificial individuality is enjoyed by a corporation, it is difficult to see why the liability of such individuality should be less, in any given case, than that of natural individuals. *Thayer* v. *St. Louis, Alton and Terre Haute R. R. Co.,* 22 Ind., 26.

*Arg.* 1.
MASTER AND
SERVANT:
torts by ser-
vant.

Nor is the argument, founded upon the idea that a corporation is not subject to indictment, well founded. It is true that Lord HOLT is reported to have laid it down, generally, that a corporation is not indictable at all, though its individual members are. 12 Mod., 559. But this doctrine has been overturned, to a very great extent; the earlier cases holding that Lord HOLT's rule did not apply to cases of nonfeasance, and, therefore, that corporations were liable to indictment for not repairing a bridge, a road, or wharf, where, by statute or prescription, it was bound so to do, but not for acts of misfeasance. But this distinction, after full consideration of the authorities in the case of *Regina* v. *Great North of England Railway*, 9 Q. B., 315, was overthrown, and corporations held liable to indictment for misfeasance as well as nonfeasance. This doctrine has been approved in this country. *The State* v. *Morris and Essex Railroad*, 3 Zabr.; 360; *Commonwealth* v. *New Bedford Bridge Co.*, 2 Gray, 339; *Commonwealth* v. *Lowell and Nashua R. R.*, Id., 54; *Commonwealth* v. *Vermont and Massachusetts R. R.*, 4 Id., 22; *The State* v. *Vermont Central R. R.*, 1 Wms. Vt., 103; see, also, Redfield on Railways, 515, *et seq.*; 1 Bishop on Crim. Law, §§ 306–310; 1 Whart. Am. Cr. Law, §§ 85–90; Angell & Ames on Corp., §§ 394–396. And, still later, it has been decided that an incorporated company might be sued for a libel transmitted by their telegraph. *Whitfield* v. *Southeast R. R. Co.*, 4 Juris., N. S., part I, p. 688; *Philadelphia, W. and B. R. R.* v. *Quigley*, 21 How. (U. S.), 202, and authorities cited. And for an assault. *The Eastern Counties R. R. Co.* v *Brown*, 6 Exch., 314. And for false imprisonment. *Chilton* v. *The London and Croydons R. R. Co.*, 16 M. & W., 212. And that they might also be guilty of acts maliciously committed with a view to injure individuals or rival companies. *Green* v. *The London General Omnibus Co.*, *ante*. And that a corporation may maintain

an action for libel for words published of them, concerning their trade or business, by reason of which they have suffered special damages. *Trenton Mut. L. & F. Ins. Co.* v. *Perrine*, 3 Zabr., 402. It has not been controverted, however, as yet, by any authority, that a corporation cannot be guilty of perjury nor of treason. But Mr. Bishop says, no reason appears why a corporation, having by law the power to act, should not also have by law the power to intend to act; and mere intentional wrong acting is all which is necessary in a class of criminal cases. 1 Bish. Cr. Law, § 307, 2d ed.

The objection, therefore, to the maintenance of this action against the corporation, under our statute, on the ground *Arg. 3.* that a master or employer is only liable for the criminal acts. neglect or default of his servant or employe, and not for his wrongful acts, is not well taken. Nor is the further objection, that the statute, by using the word *perpetrator*, gives a civil remedy for the damages resulting from *criminal* acts only, of which it is erroneously assumed a corporation could not be guilty; and, hence, if the construction of the statute contended for by appellant's counsel was the correct one, it would not, under the authorities cited, preclude this action.

The liability of the corporation, however, either civilly or criminally, would not probably be held to exempt the immediate agent in doing the wrong from original or concurrent liability therefor.

II. The deceased, although a sub-contractor for the building of bridges, and, therefore, indirectly in the employ of 2. MASTER the defendant, yet his duties were so entirely in AND SER- another department, and wholly disconnected with VANT: co-servant. operating the road, as that his relation to the employes managing the train which ran over him cannot be, in any proper sense, said to be that of a co-servant. *Gillenwater* v. *Mad. & Ind. R. R.*, 5 Ind., 339; *Philadelphsa*

*R. R. Co.* v. *Derby*, 14 How., 468; 1 Pars. on Cont., 89, and authorities cited, note.

Nor does the proof disclose that the person for whom he started to render voluntary assistance in loading a wagon on the cars, was a servant of the defendant.

The rule, therefore, that corporations, having employed persons of ordinary skill and care, by whose unauthorized act or negligence another is injured, cannot be held liable for such injury, as laid down in *Degg, Adm'r,* v. *Midland R. R. Co.,* in the Court of Exchequer (5 Am. Law Reg., 500), to which we are referred by counsel, has no application in this case. That rule is the same as that settled by the leading cases of *Priestly* v. *Fowler*, 3 Mees. & Wels., 1; *Furwell* v. *The Boston & Wor. R. R. Co.,* 4 Metc., 49; and *Mussey* v. *The So. Car. R. R. Co.,* 1 McMullin, 385; and followed in very many cases since.

III. Upon the question as to what negligence on the part of the deceased would preclude a recovery, the court below instructed the jury as liberally for defendant as any rule recognized by the courts of the country would justify.

*3. New Trial: conflicting evidence.*

The court instructed the jury, that "it must appear to you that the act was committed without the fault or wrong of the deceased. It is the duty of a person approaching a railway track to take care against the approach of danger; and inasmuch as it is impossible for a train to be suddenly stopped (a fact which is generally known), therefore a person approaching a track in sight of a moving train, should use all reasonable care to avoid possible danger, and should take notice of the fact. It is an essential element in plaintiff's case, that deceased was rightfully upon the track."

"The wrongful act" of the defendant must have produced death; that is, the death in this case must have been produced *solely* by the wrongful act of the railroad company;

for if Brickel contributed to it by any wrong of his, there can be no recovery."

"To authorize a recovery for injuries done by a railroad company, it is not enough to show the company guilty of negligence, but it must appear that the injured party was not also negligent and blameable. It is the duty of the party injured, as well as the party accused of negligence, to use all reasonable means to foresee and prevent injury; and if such means are not employed by the injured party, there can be no recovery for the injury." The last paragraph was drawn by defendant's counsel and given at their request. Without now determining whether the rule as thus given to the jury is the correct one, it seems to be as liberal for defendant as any authority can be found to sustain. There is a modification of this rule, which has the merit of much fairness (whatever may be the difficulty in its application), stated in the case of *Scott* v. *Dublin & Wicklow Railway Company*, 11 Ir. Com. Law Rep., 377; where it was held, "nor can he recover, notwithstanding there is negligence on the part of the defendant, if he has so far contributed to the accident by the want of ordinary care, that but for that the accident would not have happened; but though the plaintiff has so contributed to the accident, he is not disentitled to recover, if the defendant might, by ordinary care, have avoided the consequences of the plaintiff's neglect; and when, but for the plaintiff's negligence at the time, he might have escaped the consequences of the defendant's negligence, he cannot recover."

The evidence in this case upon the question of negligence is conflicting, and was properly submitted to the jury under such instructions as could not have prejudiced the defendant. Under such circumstances, whatever may be our view aside from the verdict as to the weight of evidence, the verdict of the jury cannot, according to our previous

holdings, be set aside. (*Gordon admr.* v. *Pitt,* 3 Iowa, 485; *Russ* v. *The Steamboat War Eagle,* 14 Id., 363, and authorities cited; *McKay* v. *Thorington,* 15 Id., 5.)

IV. The questions of fact as to whether the deceased was in the employ of the defendant in the same department with those by whose act the injury was caused, so as to make him a co-servant, and as to his being rightfully upon the track, were also fairly submitted to the jury upon the conflicting testimony of the witnesses, and proper instructions of the court. The verdict is therefore conclusive upon these questions. See authorities last above cited.

V. After the plaintiffs had closed their evidence in chief and rested, and the defendant likewise, the plaintiff then 4. EVIDENCE: called other witnesses to prove the general cus- negligence. tom of the public to cross the defendant's track and depot at the place where Brickel was killed, in order to show that he was rightfully there. The defendant objected to the testimony of such witnesses on the ground that it was irrelevant and not rebutting, but testimony in chief, and plaintiffs had introduced testimony thereon in chief. The court overruled the objection, and admitted the testimony which was material. It is true, that it devolved upon the plaintiffs in order to make out their case, to show that the deceased was rightfully and not negligently or improperly upon the track. This fact may be shown by direct testimony, or by presumption arising from facts and circumstances already proved in the case. (*Johnson* v. *Hudson River Railroad Co.,* 20 N. Y., 65.) To have sustained the objection and excluded the testimony would have been error sufficient to justify the reversal of the judgment at the instance of the plaintiff, as was held by this court in the case of *Davidson* v. *Overhulser,* 3 G. Greene, 196; *Lawson* v. *Campbell & Brother,* 4 Id., 413. Aside from these rulings, however, we should be inclined

5. —— to hold that it was a matter of discretion in the
order of: District Court, and only reviewable by this court
discretion. in case of manifest abuse. (*Rutledge* v. *Evans*, 11 Iowa, 287; *Samuels* v. *Griffith et al.*, 13 Id., 103; *Wheeler* v. *Smith*, 13 Id., 564.) The defendant then offered to recall two witnesses and reëxamine them upon the same question, which, on objection by the plaintiff, was refused. In our view of the case there was no abuse of discretion in this refusal. See last cited cases.

VI. The plaintiff's counsel, in making his case by the testimony, asked the witness to state the family and their
6. MEASURE respective ages, left by the deceased, and also his
OF DAMA- occupation, his annual earnings and his property,
GES: to all of which the defendant objected, on the
death. grounds that the questions were improper, impertinent and an incorrect mode of ascertaining the damages. The objections were overruled, the ruling excepted to, and the witnesses answered. The court instructed the jury, that if they should find for the plaintiff they would find such damage as the estate of Brickel suffered in a pecuniary way by his death; that they should not allow anything on account of the pain and suffering of the deceased before his death, or for the grief and distress of his family on account of his death, or for the loss of his society.

When a jury is thus guarded against an allowance of damages for improper causes, it would seem that no prejudice could result if the jury should be fully advised by the testimony of the exact situation of the deceased, his occupation, annual earnings, age, health, habits, family and estate. Many of these, and possibly other facts may have a just influence in determining the pecuniary damage to the estate. We would not be understood, however, as determining that evidence as to the number and ages of his children is strictly proper.

VII. The plaintiff introduced and proved by a witness that he, the witness, was a life insurance agent, resident at

7. EVIDENCE: expert. Iowa City, and had been for six months then last past; that he had the seventeenth annual report of the New York Life Insurance Company with him, on page 21 of which were the Carlisle Tables of Mortality ; and stated that the expectation of life at the age of forty-one years (which was the age of the deceased) was twenty-six and ninety-seven hundredth years. The Carlisle Tables, as contained in the book, were then introduced and read to the jury, showing the expectation of life at the age of forty-one years, as stated by the witness.

The defendant objected to the testimony of the witness, and the introduction of the Carlisle Tables : the witness had not shown himself qualified as an expert on the subject, so as to be competent to testify as such.

The Carlisle Tables being standard tables on that subject, however, were competent, according to the holding of this

8. — Life Tables. court in the case of *Bowman* v. *Woods*, 1 G. Greene, 441, where the case of *Collin* v. *Simpson*, 1 Carr. & Payne, 73, holding otherwise, was considered, and the doctrine, as recognized in 2 Beck's Medical Jurisprudence, page 666, preferred. The error in admitting the testimony of the witness was error without prejudice, as its exclusion could not alter the case. *Johnson* v. *Hudson River R. R. Co.*, 6 Duer, 633–648; *S. C.* 20 N. Y., 65, affirmed.

There were seven instructions given by the court, as asked by defendant : two asked were modified and given, and nineteen were refused. Several of those refused were, in substance, the same as those given by the court on its own motion. Our approval of the action of the court in refusing the others, as well as giving those excepted to, is based upon grounds already sufficiently set forth in this opinion. Affirmed.