CHARLES J. CARDAMON, administrator of estate of Lillian Shover McClintock, deceased, appellee, v. IOWA LUTHERAN HOSPITAL, appellant.

No. 51211.

(Reported in 128 N.W.2d 226)

508

May 5, 1964.

John Paul Jones and W. C. Hoffmann, both of Des Moines, for appellant.

Lex Hawkins, of Des Moines, for appellee.

Snell, J.—This case has been before us previously. In this appeal we have some of the same, but also additional, issues.

As originally brought, this was a law action by the then Mrs. Lillian Shover, divorced and unemployed former night-club dancer, photographers' model and night-club waitress of Des Moines, Iowa, against Iowa Lutheran Hospital, a nonprofit corporation, also of Des Moines. Plaintiff asked damages for personal injuries allegedly sustained April 29, 1956, while a patient in defendant's hospital. She had left her bed and room, unaccompanied, sometime between midnight and one o'clock in the morning to go to a nearby toilet facility, became dizzy and fell to the floor in the hallway while returning to her room.

Upon appeal from a jury verdict and judgment in favor of plaintiff in the first trial the cause was reversed by this court for lack of support in the evidence as to the extent or probable cost of future medical and hospital expense. See Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 107 N.W.2d 85.

Shortly before the reversal, Mrs. Lillian Shover McClintock (having in the interim remarried a former husband) died in San Francisco, California, of an overdose of sleeping pills. Charles

510

J. Cardamon, of counsel for the plaintiff in the first trial, was substituted as plaintiff, as the administrator of the deceased plaintiff's estate.

Amended and substituted petition in two counts was then filed. Count I was predicated upon the original action, except for the deletion of the claim for future damages. Count II was based upon the California wrongful death statute, claiming that defendant "did cause a mental condition in, and inflict a psychological trauma on, the plaintiff's decedent, in the State of California" and that because thereof Mrs. Lillian Shover McClintock had committed suicide as the result of an "uncontrollable impulse."

Trial to a jury resulted in a verdict for the plaintiff of $64,108.96 on Count I and $15,995 on Count II. Motion for new trial was duly filed and overruled. This appeal followed.

I. In Iowa causes of action survive notwithstanding the death of the person entitled or liable to the same. The action may be brought or continued by the legal representative or successor in interest of the deceased. Section 611.20 and section 611.22, Code of Iowa.

The basic issues contained in Count I of plaintiff's petition, i.e., negligence, proximate cause, freedom from contributory negligence and damages, were involved in the action started and maintained by plaintiff's decedent in her lifetime. The factual background and the issues determined in the former appeal need not be repeated.

Plaintiff's decedent died before the second trial. No claim for medical and hospital expense, pain, suffering, mental anguish or disability beyond the date of her death was submitted to the jury.

There was evidence from which a jury could find actionable negligence, proximate cause, freedom from contributory negligence and substantial damage. In fact, two juries have so found. On these issues we found no reversible error before and find none here.

The court's instructions on plaintiff's measure of damage under Count I limited recovery to compensable damage sustained

by decedent to the date of her death. The measure of damage was correctly stated under Iowa law and we find no error.

II. Defendant alleges error arising from argument of plaintiff's counsel to the jury.

Plaintiff's counsel in a prologue to his analysis of the evidence and argument said:

"Anything I say is not to be considered by you as a fact in this case, only what came from the witness stand. So anything I say in my argument you do not consider as a fact. Any impression that I draw from the evidence is my impression. You are the ones who will ultimately decide, and of course the same applies for Mr. Jones. So as we go through here, these are just my impressions of what the evidence shows, because you are the ones who will ultimately decide this case."

Beginning his argument on damages counsel said:

"Everything that I say in this argument on damages is my impression of the evidence. These are my estimates. They will be my totals. The Judge will tell you in his instructions that when you get back to that jury room there is no mathematical formula which you can use to ascertain, for example, what pain and suffering and embarrassment is worth. You have to use your own good judgment. But I will tell you how I arrived at the figures that I did, and you can use your own good judgment. These are my estimates."

Counsel then itemized on a blackboard the medical and hospital bills of decedent from the time of her injury until her death. Continuing his argument counsel said: "Folks, you cannot take into consideration or place yourself in the position of the plaintiff or the decedent, and I don't want you to. You cannot do that in assessing damages."

In a speculative vein counsel then hypothesized a person with injuries such as were claimed. He compared the hospital cost per day with the total number of days decedent had been disabled. In discussing pain and suffering counsel at one point said: "It's easy to speak of pain and say how much would you stand for $2? Would you take $2 for an hour of pain? I am going to impose upon you one hour of pain for $2."

512

Defendant's counsel promptly objected to the argument as being in violation of the "Golden Rule Argument."

The statement was promptly withdrawn by counsel with an apology and the court mentioned a previous admonishment that the jurors were not to put themselves in that position. The error in the argument was not so serious as to prevent cure. The withdrawal and admonishment make us reluctant to interfere.

White v. Chicago & Northwestern Railway Co., 145 Iowa 408, 416, 124 N.W. 309; Evans v. Roberts, 172 Iowa 653, 666, 154 N.W. 923.

Counsel used various figures multiplied by days and years of disability to explain how the amount of plaintiff's asking was reached.

In addition to counsel's statements that what he might say in argument was not to be considered as evidence, the court repeatedly and properly admonished and instructed the jury.

Various jurisdictions are not in accord as to the use of blackboards, formulas, computations or speculative hypotheses in jury arguments on damages.

We recently considered some of these problems and in Corkery v. Greenberg, 253 Iowa 846, 852, 114 N.W.2d 327, held there was no prejudicial error in the use of a per diem formula argument as to how plaintiff arrived at the amount asked. We said:

"The task of the lawyer is to assist the jury in reaching a verdict. In doing this a suggestion of the manner in which the lawyer reached the amount asked without more cannot invade the province of the jury. The jury must reach their verdict by reasoning and drawing inferences. The per diem argument is nothing more than a suggestion of a course of reasoning from the evidence of pain and disability to the award." (Loc. cit. 855)

In view of our most recent pronouncement we cannot say that the argument to the jury constituted reversible error.

III. On voir dire examination plaintiff's counsel suggested to the jury that the evidence would show that plaintiff's decedent, because of her injuries, became addicted to alcohol and narcotics. In final argument such a claim was made. These statements were within the inferences that might be drawn from

the evidence. The evidence showed the constant use of narcotics and barbiturates. Decedent died after an evening of heavy drinking and from an overdose of tuinal. We find no error in the mention, discussion or inferences drawn from the evidence.

IV. Defendant claims error by the trial court in restricting cross-examination of plaintiff's witness, Dr. Henry E. Kleinberg, and in excluding proffered testimony. The excluded testimony was either brought out otherwise during the trial or related only to the death action as contained in Count II of plaintiff's action. Doctor Kleinberg's diagnosis of decedent's condition when she entered the hospital was fully shown. The substance of the findings and report of the psychiatrist to Doctor Kleinberg was later shown by the testimony of the psychiatrist.

There is no error in excluding evidence of a fact otherwise fully established or where the evidence is subsequently admitted.

This proposition is so well settled as to need no discussion. Mongar v. Barnard, 248 Iowa 899, 906, 82 N.W.2d 765; Jaeger v. Hackert, 241 Iowa 379, 392, 41 N.W.2d 42; Korf v. Fleming, 239 Iowa 501, 513, 32 N.W.2d 85, 3 A. L. R.2d 270.

V. Defendant complains of the display in the courtroom of photographs of decedent. Had plaintiff's decedent been alive and in the courtroom her physical appearance would have been apparent. The admissibility of photographs rests largely in the discretion of the trial judge. We held in the first appeal of this case that there was no error in the admission of photographs of decedent. Shover v. Iowa Lutheran Hospital, supra, loc. cit. 719, 720 of 252 Iowa.

VI. Plaintiff's original specification of negligence 5c read as follows:

"In not providing toilet facilities for the plaintiff's decedent who was confined to her bed and in *ordering* and permitting the plaintiff's decedent, unattended, to remove herself from her hospital bed and in failing to aid her in walking to and from said rest room." (Emphasis supplied.)

Prior to submission of the statement of issues and instructions to the jury defendant attacked this statement. Plaintiff

514

then voluntarily withdrew from the specification any reference to "ordering."

Defendant now argues that the withdrawal of this part of the specification in the light of decedent's testimony at the first trial and made a part of the record in the second trial constitutes a voluntary withdrawal of additional parts of the specification. The withdrawal related only to the word "ordered." There was no withdrawal of the other allegations in the specification. The specification as submitted to the jury was the same in substance and substantially the same in its wording as previously considered in the first appeal. See Shover v. Iowa Lutheran Hospital, supra, loc. cit. 724, 725.

We found no error then and find none now.

VII. Following decedent's injury her disability continued. She was hospitalized several times and repeatedly examined and treated by physical therapists, general medical practitioners, psychiatrists, roentgenologists and neurological surgeons. She had two lumbar intervertebral disc operations and a cordotomy. Decedent herself, after consultation, decided on the cordotomy. The neurosurgeon made no recommendation. It was a calculated risk. The results were not good. There was some temporary relief from pain but increased disability.

Defendant alleges error in the trial court's overruling defendant's motion to withdraw from consideration of the jury the elements of disability, pain, suffering and medical hospital expense consequent upon the performance of the cordotomy.

The doctor performing the cordotomy was a well-known, experienced, Board Certified neurosurgeon and a Fellow of the American College of Surgeons. Decedent was not negligent in seeking relief through surgery by such a specialist. Decedent had hope but no assurance of relief. A good faith hope for relief would be the only reason prompting a patient to undergo such surgery. Assuming, arguendo, that there was an aggravated rather than an improved residual condition, the original tort-feasor is liable for the results. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 386, 101 N.W.2d 167.

VIII. On Count I of plaintiff's petition the jury awarded $64,108.96.

The amount seems large. If it were to be based primarily on decedent's previous and modest earnings it would be excessive. However, there was evidence of disability that disqualified her from the only gainful occupations she had pursued. There was evidence of over $9000 in medical, hospital and related expense. There were three major surgical operations, nine hospitalizations of over 200 days and four years and eight months of pain, suffering and disability. The jury might have found that decedent became an alcoholic and addicted to narcotics as a result of her injury.

At the time of the first trial there was the question of future disability, pain and suffering. At the time of the second trial plaintiff's decedent was dead. The period for which an allowance might be made was determined. The present verdict on Count I was nearly $10,000 less than the verdict in the first trial. Two juries have awarded large amounts. As we said in our former opinion it is not for us to substitute our judgment for that of the jury. Loc. cit. 718 of 252 Iowa.

IX. Defendant lists 13 claimed errors relied on for reversal. Each has been considered. The record is in four volumes containing 1355 pages. The printed briefs and arguments contain 603 pages. Within the reasonable limits of an opinion we can do no more than mention a few of the matters of prime importance. Our study reveals no grounds for reversal of that part of the verdict as relates to Count I of plaintiff's petition.

X. Count II of plaintiff's petition presents an entirely different problem.

Count II is a claim for wrongful death under the California death statute wherein plaintiff sought recovery as the personal representative of the heirs of decedent. Plaintiff alleged the heirs to be decedent's surviving husband and her mother.

Plaintiff alleged that the negligence of defendant in its hospital in Des Moines, Iowa, caused a mental condition in, and inflicted a psychological trauma on, plaintiff's decedent in California, producing an uncontrollable impulse to commit suicide in California.

Plaintiff accordingly seeks recovery in Iowa under California law.

516

It is well settled that the law governing a cause of action for wrongful death is lex locus delicti, or the law of the place where the wrong occurred. This rule applies as to the substantive law governing the right of action, but the procedure is determined according to the law of the forum, the lex fori. When a tort is committed a cause of action arises according to the law of the place where the tort was committed. In the case at bar the alleged tort was in the premises of the defendant hospital corporation in Iowa and occurred in 1956. It is not claimed that anything further was ever done by the defendant to cause injury to the plaintiff's decedent. Assuming, arguendo, that negligence on the part of the defendant in Iowa was the cause of the ultimate death five years later of the plaintiff's decedent in California, it does not follow that the decedent's death resulted from any act of the defendant in California. Whatever right of action plaintiff's decedent or plaintiff had or has arose by virtue of a tort committed in Iowa, and under the rule of lex locus delicti, the law of Iowa governs to determine liability.

The case was brought and maintained in Iowa so the procedural law of the forum, i.e. of Iowa, governs the procedure. It is difficult to conceive, as maintained by plaintiff, that a cause of action arising because of a tort committed in Iowa and tried in the Iowa court should be governed by any law other than the law of Iowa just because plaintiff's decedent died in California.

If plaintiff's decedent died from any cause other than as a proximate result of a tort committed in Iowa by the defendant, then in that event, there is no cause of action against the defendant. If decedent died as the proximate result of a tort committed in Iowa the right to recover, as well as the procedure, is governed by the law of Iowa.

An annotation in 77 A. L. R.2d 1266 et seq. deals with Conflict of Laws—Place of Tort. On page 1287 it is said:

"Where the question relates to the choice between the law of the place in which the fatal injury was inflicted and the law of the place in which the resulting death took place, it is settled, directly or by necessary inference, by practically all the

decisions upon the point, that the place of the tort, within the contemplation of the rule that the law of the situs of the tort governs matters of substance, is the place where the fatal injury was inflicted and not the place where the resulting death occurred."

After citing supporting authorities the annotation continues:

"In the Restatement, Conflict of Laws §391, Comment d, it is pointed out that it is the law of the place of the wrong, and not that of the place where defendant's conduct occurs or the place of death, which governs the right."

The annotation mentions decisions from several jurisdictions. We mention and quote a few excerpts therefrom.

The court in Van Doren v. Pennsylvania R. Co., 93 F. 260, said:

"* * * 'The tort, which is the gist of the action is negligence, unlawful violence, or a wrongful act proximately causing personal injury resulting in death. While the action lies to recover damages for death, death does not constitute the tort. The fact of death is not the tort, but its consequence. Negligence, unlawful violence, or a wrongful act is the tort, although death must result from injury caused by such negligence, violence, or act before the statutory cause of action accrues. * * *'

"While recognizing that a cause of action for wrongful death may not arise until an injured person dies, the court in Melton v. Southern R. Co. (1930) 236 Ky. 629, 33 S.W.2d 690, held that such a cause of action is governed by the law of the state in which the fatal accident occurs (in the present case Virginia), and not by the law of the state in which death subsequently takes place (in the present case Kentucky)."

Similar pronouncements appear from other jurisdictions reported.

On page 1286 of the annotation in 77 A. L. R.2d it is said:

"The place of injury, within the meaning of the rule stated, is the place where physical injury was inflicted on the person sustaining the injury, and not the place where his spouse suffered loss of consortium.

"This proposition is well illustrated in Jordan v. State

Marine Corp. (1958, CA9 Or) 257 F.2d 232, in which it appeared that plaintiff's husband, a seaman employed by the defendant, sustained physical injuries caused by defendant's negligence on the high seas and that his wife, in the present action, sued to recover for loss of consortium in Oregon, the place of their marital domicil. It was held that her claim was governed by maritime law, which does not know a right of action for loss of consortium, and not by the law of Oregon, which granted her such a substantive right. Agreeing with §377, Restatement, Conflict of Laws, under which 'the place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place, the court pointed out that the words "last event necessary" are used in that statement of the rule instead of "where the damage was done" or "where the harm ensued," ' and that where, as in the instant case, the tort was committed on the high seas, the term 'last event' is to be construed to mean the last act on board the vessel causing the injury to the husband. Furthermore, the court did not regard the law of Oregon making the wife's injury a recoverable tort there as an event in the chain of causative facts."

In the case before us plaintiff's decedent, a resident of Iowa, was injured in Iowa. Claiming negligence in Iowa she sought recovery in the courts of Iowa. After obtaining a jury verdict in Iowa, but before final determination or collection thereon, she moved to California where she died.

It is difficult to trace death in California after a night of heavy drinking and too many sleeping pills to an unattended fall or act of nonfeasance in Iowa over four and one-half years prior thereto. If there was any causal connection between decedent's death and defendant's negligence it is because the end result was brought about by the "last event necessary" in Iowa.

The last event means the last act causing the injury. The last act of the defendant was in Iowa.

Decedent's physician in California gave instructions to decedent and her husband to be very careful with the pills prescribed. He then instructed decedent's husband to take charge of them and at all times keep charge of them himself. The doctor's instructions were not followed. Decedent's husband gave her the

pills to put away. Later that night while unquestionably intoxicated decedent took too many pills and died from an overdose of tuinal.

If the last act necessary to her death was in California it was the taking of the pills contrary to the instructions of her physician and made possible through her husband's failure to follow instructions. Defendant had nothing to do with that.

We conclude that plaintiff's case based on a tort in Iowa, tried in Iowa under Iowa procedure, must be determined according to the law of Iowa. Any other conclusion would be lacking in reason or justice. It would be incongruous to try Count I based on a tort in Iowa under Iowa law and Count II based on the same tort under California law.

XI. At common law there was no right of action for a wrongful death. There was a right of action for damages for personal injury, but the death of the plaintiff pending the suit abated the same. The right of action which a husband had for recovery of damages suffered up to the time of death of a wife was held to continue but no action was allowed for the loss caused by the death. Various reasons were given for the rule but the result was that even though there may have been a wrong there was no remedy. The only legal procedure was by criminal prosecution and that was punitive and not compensatory.

Though there are no Iowa cases under this common-law rule prior to 1851 when legislation on the subject was enacted in Iowa, subsequent cases recognize its existence. See Donaldson v. Mississippi and Missouri Railroad Co., 18 Iowa 280, 283, 87 Am. Dec. 391; and Gardner v. Beck, 195 Iowa 62, 65, 189 N.W. 962.

Dissatisfaction with the common-law rule was extensive but it was a situation best cured by legislation. The first change was by legislative action in England through enactment of what is known as Lord Campbell's Act in 1846. This statute created a new right of action in favor of certain classes of persons and against the wrongdoer for damages resulting to them from wrongful death.

Legislation having a similar general purpose soon followed in our country. Iowa in 1851 was among the first to act. There

are, however, fundamental differences between the statutes following Lord Campbell's Act and the Iowa statute.

The distinction is clear. The acts while having the same remedial purpose differ in their provisions, their theory and application.

The beneficiaries are different. Under the English Act the action is brought by and for the parent, child or spouse. Under our Act it is by and for the decedent's estate.

The measure of damage is different. Under the English Act the measure of damage was the injury suffered by the parent, child, wife or husband, to be divided among them as the jury might direct.

Under our law the measure of damage is the loss to the estate.

The most far-reaching distinction, however, is in the nature of the action created by the statute. One is a death act. Ours is a survival statute. Under the statutes modeled on Lord Campbell's Act death still terminates the cause of action the deceased had but creates a new cause of action. The right of the decedent if he had survived to maintain an action for his injuries is important only as a condition precedent. That is, it would prove the wrong or tort. It would not be the basis for what could be recovered.

The Iowa statutes are entirely different. Our statutes "are survival acts which keep alive for the benefit of his estate the cause of action which the deceased prior to his death had for his personal injuries, but enlarging the elements of damage so as to include the injury to his estate by reason of the death." For a thorough review of authorities, analysis of our survival statutes, comparison with wrongful death statutes and our measure of damage, see Fitzgerald v. Hale, 247 Iowa 1194, 78 N.W.2d 509.

Our survival statute, section 611.20, Code of Iowa, is our alternative to the creation of a new cause of action under Lord Campbell's Act and comparable wrongful death statutes patterned thereon.

The California statute quoted in plaintiff's petition and on which plaintiff's Count II is based is denominated and

actually is a wrongful death statute. It authorizes an action with rights and liabilities such as were contemplated by Lord Campbell's Act. It creates a new cause of action not recognized in Iowa.

We held in Acuff v. Schmit, 248 Iowa 272, 78 N.W.2d 480, that there was a right of action for loss of consortium resulting from tortious injury to a spouse. We indicated in Lampe v. Lagomarcino-Grupe Co., 251 Iowa 204, 100 N.W.2d 1, that damages for loss of consortium stop upon the death of the injured spouse. In the same case, loc. cit. 207, we repeated the well-established law of this state, "that damages for wrongful death accrue to the administrator of a decedent's estate. Neither husband nor wife may sue in an individual capacity for the damages resulting from such wrongful death."

In Count II of his petition plaintiff, by suing in his own name but in behalf of others who cannot sue, seeks by indirection exactly what we have said cannot be done.

Under Instruction No. 20 relating to the measure of damage under Count II of plaintiff's petition, the trial court told the jury that decedent's surviving husband and mother were the real parties in interest and in that sense the real plaintiffs. The court then told the jury "It is compensation for the pecuniary loss suffered by them, if any, which plaintiff is entitled to recover if he is entitled to recover anything by this action." By so instructing, the trial court placed in the hands of the jury the right to grant damages for a cause of action not recognized by and entirely foreign to the law of Iowa.

Instruction No. 30, dealing with the measure of damage, authorized consideration of loss of support the husband and mother would have received from the deceased except for her death. Under Instruction No. 32 this was without regard to the fact that there was no need and that decedent had not provided such support.

Instruction No. 30 also authorized consideration of the pecuniary value of the society, comfort, care, protection and right to receive support. It authorized consideration of the age of the decedent *and her heirs,* the earning capacity of decedent, *and of each heir and what the heirs might reasonably have ex-*

*pected to receive from decedent had she lived.* (Emphasis supplied.) It limited consideration to "the shorter of the two life expectancies, that of the heirs or that of the deceased."

Instruction No. 31 instructed on the life expectancies of the surviving husband and mother.

Instruction No. 36 authorized recovery for the funeral expenses. The instruction was not in accord with the Iowa rule. See Iowa Uniform Jury Instruction No. 3.11 and annotations thereunder.

These instructions based on plaintiff's theory of the case created a measure of damage not in accord with Iowa law and based on a claim not actionable in Iowa.

 In an Iowa personal injury or death case the injured person's ability to earn and accumulate money is an important element in the measure of damage.

Our legislature, having in mind that a woman may be engaged in the most important of all occupations, the care of her family, without monetary compensation, enacted the so-called "Married Woman Act." Section 613.11, Code of Iowa. While this Act makes the value of service as a wife or mother, or both, compensable in a tort action it does not change the basic nature of our survival statutes nor change our measure of damage except to enlarge it in the one particular. It aided in the emancipation from some of the disabilities and restrictions of the common law, but it did not create a cause of action or measure of damage as outlined in the court's instructions on Count II.

The statement in Sherman v. Western Stage Co., 24 Iowa 515, 568, that "the right of action is in favor of * * * the estate of the deceased, and the rights of the next of kin, or the damages resulting to them are not to be considered or compensated for in this action" remains the law.

XII. The trial court should have sustained defendant's motion to strike Count II of plaintiff's petition and all damages claimed thereunder.

The trial court, very wisely, provided, through the use of special interrogatories, for a separate determination of the allowance on each count. That permits us to determine what part of the verdict can be affirmed and what part must be reversed.

That part of the judgment relating to Count I, i.e. $64,108.96 is affirmed. That part of the judgment relating to Count II, i.e. $15,995 is reversed and remanded to the trial court with directions to vacate and set the same aside.

It is ordered that costs on this appeal be taxed 80 percent to appellant and 20 percent to appellee.—Affirmed in part and reversed in part.

All JUSTICES concur except MOORE, J., who takes no part.