# IN THE COURT OF APPEALS OF IOWA

No. 21-0563
Filed June 15, 2022

**IN THE MATTER OF THE ESTATE OF KEVIN L. BARZ, Deceased.**

**BRAD STALEY and SUSAN STALEY,**
        Appellants.
_____

        Appeal from the Iowa District Court for Franklin County, Rustin Davenport,

Judge.


        Creditors appeal the district court's approval of settlements of wrongful

death claims by an estate's co-executors.  **AFFIRMED.**



        Brian D. Miller of Miller & Miller, P.C., Hampton, for appellants.

        Daniel P. Kresowik and Julie L. Vyskocil of Brick Gentry, P.C., West Des

Moines, for appellees.



        Heard by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

Kevin Barz and his wife died in a motor vehicle accident. They were survived by three children, who became co-executors of Barz's estate.

The co-executors filed a wrongful death action against the tortfeasor and his insurer. They reached a settlement with the tortfeasor for $622,264.15, "to be paid solely as compensation for the individual loss of consortium." They applied for court approval of the settlement.

Brad and Susan Staley resisted the application. As creditors of Barz, they asserted it was "not in the best interest of the estate to permit the [c]o-[e]xecutors to compromise the estate's wrongful death claim in such a way that almost all of the proceeds are diverted from the estate and therefore, cannot be used to pay creditors." They also filed a motion to remove the co-executors and appoint a special substitute co-executor.

Meanwhile, the co-executors reached a settlement with the insurer for the policy limit of $250,000. They amended their application to seek approval of that settlement. They specifically asked for "apportionment of the portion of the proceeds of both settlements compensating [them] for their individual loss of consortium claims."

In a preliminary order, the district court addressed "whether or not any of the settlement payments should be made available to claims of creditors." The court noted that both settlements were to be paid to the co-executors for their loss-of-consortium claims. Citing Iowa Code section 633.336 (2019), which states "[d]amages for wrongful death shall not be subject to debts and charges of the decedent's estate," the court stated the statute was "clear and . . . the money paid

in settlement [was] not subject to the claims of creditors, including claims of the Staleys."

The court separately addressed the co-executors' request for approval of the two settlements, expressing its understanding that they were seeking "an equal apportionment and distribution of the proceeds of both settlements except for amounts necessary to satisfy medical subrogation liens or to pay outstanding medical bills for treatment of injuries suffered by [Barz] in the subject accident." The court approved both settlements, ordered them "apportioned and distributed equally to each of the Applicants" subject to the designated exceptions, and reiterated that "[n]one of the settlement amounts are available to creditors, including the Staleys, for the reasons set forth in the previous order." Pursuant to the order, each co-executor was to receive approximately $207,421.38 from the tortfeasor's settlement and $80,000 from the insurer's settlement. The Staleys appealed.

Iowa Code section 633.336 states:

> When a wrongful act produces death, damages recovered as a result of the wrongful act shall be disposed of as personal property belonging to the estate of the deceased; however, if the damages include damages for loss of services and support of a deceased spouse, parent, or child, the damages shall be apportioned by the court among the surviving spouse, children, and parents of the decedent in a manner as the court may deem equitable consistent with the loss of services and support sustained by the surviving spouse, children, and parents respectively. Any recovery by a parent for the death of a child shall be subordinate to the recovery, if any, of the spouse or a child of the decedent. If the decedent leaves a spouse, child, or parent, damages for wrongful death shall not be subject to debts and charges of the decedent's estate, except for amounts to be paid to the department of human services for payments made for medical assistance pursuant to chapter 249A, paid on behalf of the decedent from the time of the injury which gives rise to the decedent's death up until the date of the decedent's death.

As the Staley's aptly put it, "the parties disagree about the meaning of Iowa Code section 633.336." They sum up the disagreement as follows:

> The Kevin Barz Estate believes that said code section automatically, without a hearing or evidence, removes all wrongful death proceeds from estate administration and the reach of estate creditors if there is a surviving spouse, child or parent. The [Staleys] believe that some of the damages recovered as a result of Kevin Barz's death are estate assets, must be remitted to the estate, and administered consistent with Iowa law.

"Our first step in a case of statutory interpretation 'is to determine whether the language is ambiguous.'" *State v. Davison*, 973 N.W.2d 276, 281 (Iowa 2022) (citation omitted). "To determine if a statute is ambiguous, we consider its language in context and consider whether reasonable minds differ or are uncertain as to the meaning of the statute." *Id.*

The key sentence is the third one: "If the decedent leaves a spouse, child, or parent, damages for wrongful death shall not be subject to debts and charges of the decedent's estate." The Staleys assert the sentence conflicts with the first part of the first sentence: "When a wrongful act produces death, damages recovered as a result of the wrongful act shall be disposed of as personal property belonging to the estate of the deceased." To the contrary, the first sentence sets forth the general rule for wrongful-death damages, while the third sentence sets forth an exception when the decedent leaves a spouse, child, or parent. Reasonable minds would not discern an ambiguity in the meaning of the third sentence when viewed in conjunction with the first part of the first sentence.

The Staleys next assert that the third sentence must be read with the second part of the first sentence as well as the second sentence of section 633.336. Those sentences, the Staleys assert, evince a statutory intent to exclude

only loss-of-consortium damages rather than all wrongful-death damages from estate administration.  Again, we are not convinced reasonable minds would find an ambiguity in the third sentence based on that language.

After setting forth the general rule in the first part of the first sentence, the legislature used the word "however."  "However" means, "in spite of that; on the other hand."  *However*, Merriam-Webster, https://www.merriam-webster.com/dictionary/however (last visited June 8, 2022).  Synonyms for "however" are "but," "nevertheless," "still," "yet," or "although."  *Id.*  By using "however," the legislature signaled that what followed would not conform to the general rule.  Indeed, it does not.  The clause after "however" references "damages for loss of services and support."  These damages are a subset of all wrongful-death damages.  *See Madison v. Colby*, 348 N.W.2d 202, 206 (Iowa 1984) (stating "the loss of services element has become identified with a recovery for all of the traditional elements of common law consortium"); *see also Kulish v. West Side Unlimited Corp.*, 545 N.W.2d 860, 862 (Iowa 1996) (stating "the term 'services' includes intangible consortium damages").[1]  In other words, the second part of the first sentence is an exception to the general rule that is triggered when a narrow subset of wrongful-death damages is included in the recovery.  The second sentence of section 633.336,[2] in turn, simply prioritizes the disbursement of damages when the exception applies.

---

[1] The clause after "however" also refers to "damages for loss of . . . support," which is a "separate and independent right of the injured person to recover."  *Madison*, 348 N.W.2d at 209.  The "support" category of damages would encompass some of the remaining categories of wrongful death damages.

[2] The sentence states, "Any recovery by a parent for the death of a child shall be subordinate to the recovery, if any, of the spouse or a child of the decedent."

The reference in the second half of the first sentence to a seemingly narrower class of damages would not lead reasonable minds to believe the third sentence also must be read narrowly to apply only to "damages for loss of services and support." The third sentence is also an exception to the general rule. But that exception is not triggered by the type of damages involved. It is triggered by the survival of a spouse, child, or parent. When the exception is triggered, it then extends to "damages for wrongful death" generally.

While we conclude a contextualized reading of the third sentence of section 633.366 leaves no ambiguity as to its meaning, any perceived ambiguity is resolved by an examination of the legislative history. *See Petro v. Palmer Coll. of Chiropractic*, 945 N.W.2d 763, 772 (Iowa 2020) (discussing evolution of two statutory concepts and stating "[t]o the extent the text . . . is ambiguous, this legislative history supports the foregoing interpretation"); *Bank of America, N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014) ("We consider a statute's legislative history, including prior versions of the statute." (citing *State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013))).

The preference for immediate family members dates back to England's enactment of Lord Campbell's Act in 1846. *See Cardamon v. Iowa Lutheran Hosp.*, 128 N.W.2d 226, 234–35 (Iowa 1964). That Act created a wrongful death action and stated the action would "be for the benefit of the wife, husband, parent, and child of the" decedent and damages would be apportioned among them. *See Lord Campbell's Act Chapter XCIII*, American Law Register, vol. 7, 584–85 (1889), available at https://archive.org/details/jstor-3305231/page/n1/mode/2up (last visited June 8, 2022).

Iowa enacted a wrongful-death statute shortly thereafter. *Cardamon*, 128 N.W.2d at 235 ("Our survival statute, section 611.20, Code of Iowa, . . . is our alternative to the creation of a new cause of action under Lord Campbell's Act and comparable wrongful death statutes patterned thereon."). Like the present statute, the 1851 Code disallowed creditor claims on wrongful-death damages where the decedent was survived by immediate family members. *See* Iowa Code § 2501 (1851) (stating, "when the deceased left a wife, child, or parent surviving him, [the sum recovered] shall not be liable for the payment of debts").

This provision remained substantially unchanged for over 100 years. *See id.* § 4111 (1860); *id.* § 4111 (1872); *id.* § 2526 (1873)[3]; *id.* § 3313 (1897)[4]; *id.* § 11920 (1924); *id.* § 635.9 (1962). The provision was repeatedly upheld. *See Armbuster v. Chicago, R.I. & P. Ry. Co.*, 147 N.W. 337, 341 (Iowa 1914) (noting "the creditor of the deceased [is not] permitted to share the recovery"); *In re Williams' Estate*, 107 N.W. 608, 612 (Iowa 1906) ("By our Code (section 3313), it is expressly provided that damages collected on account of death wrongfully occasioned are to be treated as a part of the estate, and distributed to the heirs and next of kin exempt from the debts of the deceased."); *Major v. Burlington*, 88 N.W. 815, 816 (Iowa 1902) ("Nothing in these statutes indicates a purpose to create a cause of action in favor of wife or children, save as they may share in the distribution of the damages recovered, freed from any claim of creditors." (citing

---

[3] In 1873, the section was amended to read, "When a wrongful act produces death, the damages shall be disposed of as personal property belonging to the estate of the deceased, except that if the deceased leaves a husband, wife, child, or parent, it shall not be liable for the payment of debts." Iowa Code § 2526 (1873).

[4] The 1897 code provision replaced the words "except that" with "but." Iowa Code § 3313 (1897).

Iowa Code § 3313 (1901))); *Casady v. Grimmelman*, 77 N.W. 1067, 1069 (Iowa 1899) (applying 1873 version of the statute and concluding, "As the amount recovered was not subject to the debts of decedent, it descended in equal parts to the [decedent's] father and mother").

In 1966, the legislature amended section 633.366 to provide for the payment of certain limited types of debts from the wrongful-death damages. *See* Iowa Code § 633.336 (1966); *see also id.* § 633.424 (subjecting wrongful-death damages to payment of court costs, other costs of administration, funeral and burial expenses, and medical expenses associated with the decedent's final illness"). Ten years later, the legislature removed that provision and re-enacted language disallowing creditors from obtaining wrongful-death damages. 1976 Iowa Acts ch. 1227, § 4 ("If the decedent leaves a spouse, child or parent, damages for wrongful death shall not be subject to debts and charges of the decedent's estate."). In short, for 160 of the last 170 years, *all* wrongful death damages have been excluded from the estate's debts and charges. Even if the third sentence of section 633.336 is ambiguous, the legislative history supports the co-executors' interpretation.

The Staleys belatedly raise a constitutional challenge to the statute. We decline to address the issue because it was not preserved for review. *See State v. Bynum,* 937 N.W.2d 319, 324 (Iowa 2020).

The Staleys also argue, "The [d]istrict [c]ourt erred when it apportioned damages under Iowa Code section 633.336 without an evidentiary hearing" and "[t]he [d]istrict [c]ourt erred when it found that the [c]o-[e]xecutors in this matter did not have a conflict of interest in this matter." The co-executors respond, "No

creditor, let alone an unsecured creditor, has standing to challenge a wrongful death settlement proposed pursuant to Iowa Code sections 613.15 and 633.336." We agree with the co-executors. The district court did not err in concluding the co-executors lacked standing to raise these issues. *See Iowa Citizens for Cmty. Improvement v. State*, 962 N.W.2d 780, 787 (Iowa 2021) (setting forth standard of review); *see also id.* at 790–91 (addressing standing principles and stating, "Think about it this way: If the court can't fix your problem, if the judicial action you seek won't redress it, then you are only asking for an advisory opinion").

**AFFIRMED.**